IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ASHLEY FURNITURE INDUSTRIES, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>JON PARKS a/k/a JONATHAN PARKS,<br><br>    Defendant. | CASE NO. 12-CV-679 |

**COMPLAINT FOR DAMAGES & INJUNCTIVE RELIEF**

Plaintiff, Ashley Furniture Industries, Inc. ("Ashley"), by its undersigned attorneys, complains against defendant Jon Parks, also known as Jonathan Parks ("Mr. Parks"), as follows:

**THE PARTIES**

1. Plaintiff Ashley is a Wisconsin corporation with its principal place of business at One Ashley Way, Arcadia, Wisconsin 54612.

2. On information and belief, defendant Mr. Parks is an individual who resides at 4 Windflower Court, Reisterstown, Maryland, 21136.

**JURISDICTION AND VENUE**

3. This action arises under the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. §§ 1125(d).

4. Jurisdiction is expressly conferred on this Court under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

5. Mr. Parks targeted acts of cyberpiracy at a company located in this judicial district as complained herein and, upon information and belief, Mr. Parks markets his various business endeavors in this judicial district; therefore, Mr. Parks is subject to personal jurisdiction in this district.

6. Venue is proper in the United States District Court for the Western District of Wisconsin, pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to this lawsuit occurred in this district and Mr. Parks is subject to personal jurisdiction here.

## BACKGROUND

7. Ashley is the largest home furniture retailer and manufacturer in the United States. Ashley sells a full line of furniture as well as mattresses and home accents and accessories under the trademark ASHLEY.

8. Ashley has sold furniture under the ASHLEY trademark since 1946.

9. Ashley owns and operates furniture retail stores throughout the United States under various ASHLEY marks, including, among others, ASHLEY HOMESTORES, ASHLEY FURNITURE HOMESTORE and ASHLEY FURNITURE HOMESTORE OUTLET.

10. Ashley furniture is also widely available through licensed showrooms and retailers throughout the United States.

11. Ashley is the owner of federally registered marks containing the term "ASHLEY," including, but not limited to, the following marks:

| Mark | Reg. No. / Reg. Date | Goods/Services |
|---|---|---|
| ASHLEY | 1600879 6/12/1990 | furniture |
| ASHLEY | 1864076 11/22/1994 | retail store services in the field of furniture |
| ASHLEY HOMESTORES | 2231864 3/16/1999 | retail store services in the field of furniture |
| ASHLEY FURNITURE HOMESTORE & Design | 2449045 5/8/2001 | retail store services in the field of furniture |
| ASHLEY & Design | 2752333 8/19/2003 | furniture |

| Mark | Reg. No. / Reg. Date | Goods/Services |
|---|---|---|
| A ASHLEY FURNITURE HOMESTORE & Design | 2980669 8/2/2005 | retail store services in the field of furniture |
| A ASHLEY FURNITURE & Design | 2894665 10/19/2004 | retail store services in the field of furniture |
| ASHLEY FURNITURE HOMESTORE | 2680466 1/28/2003 | retail store services in the field of furniture |
| ASHLEY FURNITURE HOMESTORE OUTLET & Design | 3639973 6/16/2009 | retail store services in the field of furniture |
| ASHLEY FURNITURE HOMESTORE OUTLET | 3639972 6/16/2009 | retail store services in the field of furniture |
| A ASHLEY-SLEEP | 3795910 6/1/2010 | mattresses |

Status documents from the U.S. Patent and Trademark Office evidencing these registrations are attached as **Exhibit A**. Such federal registrations are collectively referred to in this Complaint as the "ASHLEY Federal Registrations." The ASHLEY Federal Registrations and all related common law rights in these marks are referred to collectively as the "ASHLEY Marks."

12. The ASHLEY Federal Registrations are in full force and effect on the U.S. Patent and Trademark Office's Principal Register. The first eight ASHLEY Federal Registrations listed in the chart above have become incontestable and constitute conclusive evidence of the validity of the marks, Ashley's ownership thereof, and of Ashley's exclusive right to use the registered marks in connection with the goods and services identified in the registrations (15 U.S.C. § 1115(b)). The last three registrations listed in the chart above constitute prima facie evidence of the validity of the respective marks, Ashley's ownership thereof, and of Ashley's exclusive right to use the registered marks in connection with the services identified in the registrations (15 U.S.C. § 1115(a)).

13. Ashley is the registrant of domain names incorporating ASHLEY Marks, including ashleyfurniture.com (registered June 22, 1996) ashleyfurniturehomestores.com (registered April

3

6, 2000) and ashleyfurniturehomestore.com (registered April 30, 2004) (collectively, the "ASHLEY Domain Names"). Since the respective registration dates, Ashley has at all times been the registrant of the ASHLEY Domain Names.

14. Ashley's websites (the "Ashley Websites") are accessible through the ASHLEY Domain Names. The Ashley Websites advertise and promote Ashley's furniture and retail store services. Among other things, the Ashley Websites provide product information and retail store location information for prospective purchasers. True and correct copies of representative pages from the Ashley Websites are attached as **Exhibit B**.

15. The ASHLEY Marks represent an extremely well-known brand of furniture and furniture stores.

16. Ashley operates and licenses more than 400 retail furniture stores under its ASHLEY Marks throughout the United States. Ashley has been the largest furniture retailer in the United States for the past six years. Ashley's estimated sales in the United States reached nearly $2.7 billion in 2011.

17. Ashley promotes the ASHLEY Marks and the goods and services sold under the ASHLEY Marks extensively throughout the United States across the full range of media, including television, radio, print, outdoor billboards, and online.

18. Since 1946, Ashley has expended substantial time, effort and money in advertising, promoting and marketing goods and services sold under or in connection with the ASHLEY Marks. As a result of extensive use and advertising, the ASHLEY Marks have acquired valuable goodwill and are recognized as identifying goods and services provided exclusively by Ashley.

19. Notwithstanding Ashley's prior, continuous and extensive use of the ASHLEY Marks, Mr. Parks registered at least 123 domain names incorporating the ASHLEY trademark

4

(the "Infringing Domain Names") in June 2012.  A list of the Infringing Domain Names is attached as **Exhibit C**.

20.     Many of the Infringing Domain Names combine the ASHLEY trademark with products sold by Ashley or services offered by Ashley, including: ashleybed.com, ashleychair.com, ashleyfurni.com, ashleyfurnitureashleyfurniture.com, ashleyfurniturefurniturestore.com, ashleywarehousefurniture.com, outletashleyfurniture.com, bedashley.com, bedsashley.com, sofaashley.com and sofasashley.com.

21.     Many of the Infringing Domain Names combine the ASHLEY trademark with a geographical location where Ashley operates or licenses furniture retail stores under its ASHLEY Marks, including but not limited to: ashleygeorgia.com, ashleynewyork.com, ashleyarizona.com, ashleycalifornia.com, ashleysandiego.com, ashleyportland.com and ashleyphoenix.com.

22.     Mr. Parks was clearly aware of Ashley and the ASHLEY Marks when he registered the Infringing Domain Names.  Mr. Parks' profile on LinkedIn (attached as **Exhibit D**) and a press release for Mr. Parks' Metric Advertising business on PRWeb ( attached as **Exhibit E**) reference his former role as CEO of Horich Parks Lebow Advertising, an advertising agency used by Ashley retailers and dedicated to the home furnishing industry (attached as **Exhibit F**). Horich Parks Lebow claims that it is "one of the largest advertising agencies in the country devoted exclusively to the home furnishings industry" and that its "clients include some of the biggest names in furniture and mattresses, both retailers and manufacturers."

23.      Mr. Parks stated on the website for his Metric Advertising business that he engages in "domaining."  *See* **Exhibit G**.  According to Mr. Parks, "domaining" refers to buying domain

5

names with the hope of "either reselling the names for profit, or taking the names and creating a website around that name that will yield monetization in some way." *See id.*

24. Based on Mr. Parks' own definition of "domaining," Mr. Parks registered the Infringing Domain Names for the purpose of either reselling the names for profit, or taking the names and creating websites around those names that would yield monetization in some way.

25. Mr. Parks, by his own admissions, intended to engage in cyberpiracy as set forth in 15 U.S.C. § 1125(d)(1)(B)(i)(VI) by offering to sell the domain names for financial gain without having used or having the intent to use the Infrimate Domain Names for a legitimate purpose. The "monetization" of the domain names incorporating federally registered trademarks, like the ASHLEY Marks, would unfairly trade off the goodwill of the trademarks and create a likelihood of consumer confusion.

26. In fact, Mr. Parks has not made any use of the Infringing Domain Names and, after receiving a demand letter from Ashley (attached as **Exhibit H**), Mr. Parks sought to quietly cancel the registration of the domain names that combined the ASHLEY trademark with descriptive words for furniture; thus, acknowledging his lack of a legitimate right to register domain names that combine the ASHLEY trademark with descriptive terms for furniture.

27. Mr. Parks refuses to transfer the Infringing Domain Names that he continues to own to Ashley and disingenuously claims he intended to register domains corresponding with the female name, "Ashley" or a geographic location. Mr. Parks' previous work in the advertising industry for furniture companies, including Ashley's customers, combined with his registration of domains like ashleybed.com, ashleychair.com and ashleyfurnitureashleyfurniture.com clearly refute any innocent explanation for registering 123 domain names incorporating the ASHLEY trademark.

**COUNT I**
**VIOLATION OF THE LANHAM ACT - ANTICYBERSQUATTING**
**CONSUMER PROTECTION ACT**

28. Ashley incorporates the allegations of Paragraphs 1 through 27, inclusive, as if fully set forth herein.

29. At the time of Mr. Parks' registration of the Infringing Domain Names, each of the ASHLEY Marks were distinctive. Further, Ashley's ASHLEY trademark was famous. Mr. Parks registered the Infringing Domain Names, which are identical or confusingly similar to, or dilutive of, the ASHLEY Marks owned by Ashley with a bad faith intent to profit from Ashley's rights in its ASHLEY Marks in violation of 15 U.S.C. § 1125(d).

30. Mr. Parks' bad faith intent to profit from Ashley's ASHLEY Marks is demonstrated by numerous factors, including the following:

(a) Mr. Parks has no trademark rights or other intellectual property rights in the Infringing Domain Names;

(b) The Infringing Domain Names do not consist of the legal name of either Mr. Parks, or any other name by which Mr. Parks is known;

(c) Mr. Parks has not used the Infringing Domain Names in connection with the bona fide offering of any goods or services prior to Ashley's use and registration of the ASHLEY Marks;

(d) Mr. Parks has made no bona fide noncommercial or fair use of any of the ASHLEY Marks in a site accessible under the Infringing Domain Names.

(e) Mr. Parks intended to "monetize" the Infringing Domain Names and by doing so Mr. Parks also had the intent to divert consumers from Ashley's online location to a site accessible under the Infringing Domain Name that

could harm the goodwill represented by the ASHLEY Marks, either for Mr. Parks' commercial gain or with the intent to tarnish or disparage the ASHLEY Marks, by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of the site accessible under the Infringing Domain Names;

(f) Mr. Parks knew that the Infringing Domain Names were identical or confusingly similar to Ashley's ASHLEY Marks; and

(g) Mr. Parks acquired multiple domain names that he knew where identical or confusingly similar to Ashley's ASHLEY Marks.

31. Mr. Parks' actions are willful, deliberate and done with knowledge of Ashley's exclusive proprietary rights.

32. Ashley has no adequate remedy at law. The unlawful activities of Mr. Parks described herein have caused, and if not enjoined will continue to cause, irreparable damage to the rights of Ashley, to Ashley's ASHLEY Marks, and to the business reputation and goodwill of Ashley.

## PRAYER FOR RELIEF

WHEREFORE Ashley Furniture Industries, Inc. prays for the following relief:

A. Judgment for Ashley and against Mr. Parks in an amount to be determined at trial.

B. Transfer of the registration of the Infringing Domain Names and any other domain name that is identical or confusingly similar to any of Ashley's ASHLEY Marks to Ashley.

C. That Mr. Parks and his officers, agents, servants, employees, successors, assigns, parents, subsidiaries, affiliated or related companies, attorneys and all persons in active concert and/or participation with him who receive notice be permanently enjoined and restrained from:

    i)    Registering, trafficking, using, or maintaining the registration of the Infringing Domain Names or any other domain name that is identical or confusingly similar to any of Ashley's ASHLEY Marks;

    ii)    Using the ASHLEY Marks, the mark or name ASHLEY, or any confusingly similar mark, name, domain name or colorable imitation thereof, in connection with Mr. Parks' business which may in any way mislead or confuse anyone as to the source, affiliation or sponsorship of such business;

    iii)    Otherwise infringing or diluting the distinctive quality of the ASHLEY Marks;

    iv)    Injuring Ashley's business reputation and the goodwill associated with Ashley's ASHLEY Marks and from otherwise unfairly competing, directly or indirectly, with Ashley; and

    v)    Causing a likelihood of confusion or misunderstanding as to source, sponsorship, association, affiliation, approval or certification with or by plaintiff, or engaging in conduct tending to create a false commercial impression of Ashley's products or services or any other conduct which tends to pass off Mr. Parks' products or services as those of Ashley or creates a likelihood of confusion or misunderstanding or false representation.

D.    That Mr. Parks be directed to file in Court, and to serve on Ashley, within thirty (30) days after entry of an injunction, a report in writing, under oath, setting forth in detail the manner and form in which he has complied with the injunction.

  E. That Mr. Parks be required to pay Ashley statutory damages of not less than $1,000 and not more than $100,000 per domain name, as the Court determines just under 15 U.S.C. § 1117(d).

  F. That this Court award the maximum statutory damages to fully compensate Ashley for the willful and wanton nature of Mr. Parks' wrongful acts.

  G. The Court find that this is an "exceptional" case pursuant to 15 U.S.C. § 1117 and award reasonable attorneys' fees to Ashley.

  H. That this Court grant Ashley such other and further relief as the Court deems just and equitable.

### JURY DEMAND

Ashley demands trial by jury on all matters and issues so triable.

            Respectfully submitted,

            **MICHAEL BEST & FRIEDRICH LLP**

Dated: September 19, 2012     s/Amy L. Vandamme
            Amy L. Vandamme (SBN 1029784)
            Email: alvandamme@michaelbest.com
            Katrina G. Hull (SBN 1056517)
            Email: kghull@michaelbest.com
            100 East Wisconsin Avenue
            Suite 3300
            Milwaukee, WI 53202-4108
            Telephone: (414) 271-6560
            Facsimile: (414) 277-0656

            Attorneys for Plaintiff,
            ASHLEY FURNITURE INDUSTRIES, INC.

029867-9033-REFILE/11871203v6